UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DAVID CAMPBELL,
Plaintiff

VS. C. A. NO. 05-428 T

CORNELL CORRECTIONS OF
RHODE ISLAND, INC., ET AL,
Defendants

**DEFENDANTS, CORNELL CORRECTIONS OF RHODE ISLAND, INC. (incorrectly identified as Cornell Corrections, Inc.) AND OFFICERS APRIL PERRY, GEOFF WESTON AND HENRY PAUL'S MEMORANDUM IN SUPPORT OF THEIR OBJECTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

The Defendants, Cornell Corrections of Rhode Island, Inc., (incorrectly identified as Cornell Corrections, Inc.), and Officers April Perry, Geoff Weston and Henry Paul, pursuant to the provisions of Fed.R.Civ.P. 56(b), hereby submit this memorandum in support of their objection to Plaintiff's Motion for Summary Judgment and in support of their Cross-Motion for Summary Judgment as to all of Plaintiff's claims.

Defendants Cornell Corrections of Rhode Island, Inc., and Officers April Perry, Geoff Weston and Henry Paul object to Plaintiff's Motion for Summary Judgment on the grounds that the Plaintiff's Motion for Summary Judgment is not timely and not in compliance with the Local Rules of Civil Procedure. In further support of their objection, Defendants also aver that numerous "undisputed facts" relied upon by the Plaintiff are in fact disputed, are not supported by the record and cannot form a factual basis for his Motion. Finally, Defendants aver that regardless of whether Plaintiff's "facts" underlying his Motion for Summary Judgment are disputed, accurate or inaccurate, the facts which Plaintiff calls upon to support his claim for entitlement to summary judgment are not material to the issues in this matter.

As grounds for their cross-motion for summary judgment, the Defendants aver that the indisputable record unequivocally demonstrates that the Plaintiff suffered no violation, constitutional or otherwise. Furthermore, Plaintiff's Constitutional claims are not actionable since none of these Defendants was acting under the color of state or federal law. Finally, the Plaintiff's claims against Cornell Corrections of Rhode Island, Inc. (incorrectly identified as Cornell Corrections, Inc.) are not actionable since there can be no vicarious liability under 42 U.S.C. § 1983.

## I. INTRODUCTION

Plaintiff, David Campbell, a detainee lawfully confined to the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island ("Wyatt"), brought this *pro se* civil action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants refused to accommodate his request for a Rastafarian diet, in violation of the Eighth Amendment, and denied him access to the courts in violation of the First Amendment by destroying his legal papers. Plaintiff seeks monetary damages.

## II. SUMMARY OF PROCEEDINGS

On April 12, 2006, service of process was effected on Defendants Cornell Corrections, Inc. and Officer April Perry. Plaintiff has never served Captain Robert Reis (misidentified in the Complaint as "Lieutenant John Reis"). (See, Plaintiff's Complaint, Caption; ¶ 3). Plaintiff filed a Motion to Amend his Complaint on September 11, 2006, seeking to add several new Defendants. The motion was granted and an Amended Complaint naming Officer Henry Paul, Officer David Dumas, Officer Geoff Weston, LPN Maureen Rocha, and "Five Unknown Officers" as defendants was filed thereafter. Service of process was effected on Officers Paul and Weston. Service never been made on Officer Dumas or Nurse Rocha.

On or about August 20, 2007, the Plaintiff served upon Defendants his Motion for Summary Judgment. Included with his motion are a Memorandum of Law and a "Statement of Material Facts Not in Dispute."

## III. FACTS

The Plaintiff, David Campbell is a prisoner lawfully confined to the United States Penitentiary-Canaan, in Pennsylvania. (Exhibit A, ¶ 1). Plaintiff arrived at the Donald W. Wyatt Detention Facility on May 6, 2005 and departed the Wyatt facility on May 25, 2005. Plaintiff was housed in the Main Unit of the facility. (Exhibit B). Prior to his detention at Wyatt, Plaintiff had been housed in the MacDougall-Walker Correctional Facility and at the Cheshire State Correctional Facility, both in the State of Connecticut. (Exhibit A, ¶ 5).

Plaintiff was transferred to the Wyatt facility on May 6, 2005. Exhibit B. Upon arrival, the Plaintiff was given a copy of the inmate orientation manual as well as a physical. Exhibit C. The inmate orientation policy states that inmate property left at the facility without a forwarding address will be destroyed after thirty days. Exhibit C; Exhibit J. Plaintiff refused to provide a forwarding address either at the time of this arrival or his departure on the 25th of May, 2005. Exhibit C. Plaintiff's legal documents were destroyed pursuant to facility policy on July 29, 2005. Exhibit E; Exhibit F. Plaintiff has alleged that the destruction of his legal materials prejudiced his prosecution of the litigation against Counselor Mawhinney, et al., and Warden Dzurenda, et al. Amended Complaint, p. 9 "Previous Lawsuits"; Exhibit A, ¶ 5; Exhibit G).

Plaintiff was housed in the main unit of the facility. Exhibit B. Despite Plaintiff's assertions that he was housed in the Health Services Unit from May 6, 2005 to May 19, 2005, there is nothing in the record to suggest that that was the case. Furthermore, despite Plaintiff's assertions that he was not provided a Rastafarian diet while he was allegedly confined in the

Health Services Unit, and that his refusal to eat a non-conforming diet was noted by staff, Plaintiff can point to nothing in the record to support his allegations. Furthermore, even if, *arguendo*, these allegations are true, Defendants are entitled to judgment as a matter of law.

Defendants now move for summary judgment on all of Plaintiff's claims since Plaintiff cannot establish a genuine issue of material fact, and even if all of the Plaintiff's allegations are true, they are nonetheless not material, and Defendants are entitled to judgment as a matter of law.

## IV. ARGUMENT

### A. Standard of Review

Summary judgment is intended to provide a fair and efficient means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways. Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 112 S.Ct. 2965 (1992). It serves as an appropriate disposition where the record shows that there is no genuine issue or material fact in dispute and that the moving party is entitled to judgment as a matter or law. Fed.R.Civ.P. 56(c).

"Summary judgment should be granted where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Scully Signal Company v. Joyal, 881 F. Supp. 727, 738 (D.R.I. 1995) (citing Fed. R. Civ. P. 56(c)) (other citations omitted). To overcome a motion for summary judgment under Rule 56(c), the nonmoving party must present facts that show that there is a genuine issue for trial. Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "[T]he evidence presented by the nonmoving party cannot be conjectural or problematic; it must have

substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." Id. (internal quotation omitted).

It is well established that even a *pro se* inmate's claims must be comprised of more than speculation, conjecture, or conclusory allegations. Hurney v. Carver, 602 F.2d 993, 995 (1st Cir. 1979). A *pro se* plaintiff's allegations "must be backed up with enough supportive facts to outline the elements of a pleader's claims [and] . . . courts need not conjure up unpleaded facts to support conclusory [allegations]." Id. at 995. "The pleadings are not sufficient where the plaintiff rests on 'subjective characterizations' or unsubstantiated conclusions." Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990). When determining a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party; all reasonable inferences must be drawn in the nonmoving party's favor. Mesnick, 950 F.2d at 820; Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

"[A] 'genuine issue' exists if there is 'sufficient evidence supporting the claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial'" Libertad v. Welch, 53 F. 3d 428, 435 (1st Cir. 1995), (citing Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576 (1st Cir. 1994). A fact is material if its resolution might affect the outcome of the case under the controlling law. Cochran v. Quest Software, 328 F.3d 1, 6 (1st Cir. 2003). A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way. Id.

To oppose the motion successfully, the nonmoving party "may not rest upon mere allegation or denial of his pleading." Anderson, 477 U.S. at 256. Moreover, the evidence presented by the nonmoving party "'cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve at an

ensuing trial'" Mesnick, 950 F.2d at 822 (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Indeed, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Thus, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman, 985 F.2d at 1116 (citing Anderson, 477 at 249).

### B. Plaintiff Suffered No Constitutional Violation Because the Burden of Accommodating a Rastafarian Diet Is an Excessive Administrative Burden

As a general matter, it has been held that prisoners have a Constitutional right to a religious diet. See Kahane v. Carlson, 527 F.2d 492 (2nd Cir. 1975). Courts, however, have been reluctant to grant dietary requests where the cost is prohibitive or the accommodation is administratively excessive. See Kahey v. Jones, 836 F.2d 948, 951 (5th Cir. 1988). For example, in Ashelman v. Wawrzaszek, the Ninth Circuit recognized that providing three frozen Kosher meals a day to Jewish inmates would result in excessive costs and burdens. 111 F.3d 674, 678 (9th Cir. 1997). Similarly, and more to the point in this case, it has also been held that providing Rastafarian diets would result in excessive costs and burdens.

In Benjamin v. Coughlin, the district court for the Southern District of New York stated that providing a Rastafarian diet was excessively burdensome. 708 F.Supp. 570 (S.D.N.Y. 1989), aff'd, 905 F.2d 571 (2nd Cir. 1990). There, plaintiffs were Rastafarians incarcerated at a state prison in New York. 708 F.Supp. at 571. While incarcerated, they requested a Rastafarian diet. Id. When their request was not granted, they sued New York state prison administrators, claiming that their constitutional right to freedom of religion was violated. Id. The court noted

that in some situations, failure to provide a requested religious diet might be deemed unconstitutional. Id. at 575 - 576. However, the court said, plaintiffs' request for a Rastafarian diet was not one of those situations because the Rastafarian diet, unlike diets of Jews or Muslims, cannot be easily accommodated. Id. Pointing out that Rastafarians do not eat unnatural foods and/or meats and that the diet of one Rastafarian can be different from another Rastafarian, the court stated that it "would be both expensive and a severe administrative burden...to provide Rastafarian inmates [with their requested diet]." Id. Because of this, prison administrators were not required to provide such a diet. Id.; see also Udey v. Kastner, 805 F.2d 1218 (5th Cir.1986) (prisoner's request for natural food diet, even if based on sincere beliefs, would create undue costs and administrative burdens, and have a potentially disruptive effect on prison discipline).

Here, the situation is the same as Benjamin. Everyday, Wyatt serves meals to hundreds of detainees and, like the prison noted in Benjamin, would suffer an excessive administrative burden if it were required to accommodate Plaintiff's request for a meal with no "meat, eggs, or any meat products" and prepared in a "kosher" manner. (Exhibit A, ¶ 9). Accordingly, even if the Court takes as true that Plaintiff is a Rastafarian, that he actually requested a Rastafarian meal, and that Defendants refused him one, the above cited cases instruct that as a matter of law, there is no constitutional violation in refusing to provide him a Rastafarian diet because doing so would be excessively burdensome.

### C. Plaintiff Suffered No Tangible Injury as a Result of His Legal Papers Being Destroyed

Generally, a person incarcerated in prison has a constitutional right of access to the courts, Lewis v. Casey 518 U.S. 343 (1996), and our courts have held that destruction of legal materials may violate that right. Simmons v. Dickhaut, 804 F.2d 182 (1st Cir. 1986). However, even when legal materials are destroyed, when there has been no tangible injury to a plaintiff,

there will be no grant of relief. Lewis, 518, U.S. at 351. Here, Plaintiff alleges that the destruction of his legal papers prejudiced him in his preparation for a summary judgment motion in his lawsuit against Warden Dzurenda, et al.[1] and motion to dismiss in his lawsuit against Scott Mawhinney, et al.[2] Exhibit A, ¶ 5.

An examination of the Plaintiff's claims, as well as the rulings in those two matters, however, clearly indicates that even if the allegedly destroyed documents were available to Plaintiff, they would have not have made any impact on the Judges' rulings and thus, he has suffered no tangible injury.

**1. There was no injury in the *Dzurenda* case because the Judge's ruling would not have been impacted even if Plaintiff possessed the documents which were allegedly destroyed.**

In his case against Wayne Dzurenda, et al., Plaintiff states that Defendants destroyed the following documents, prejudicing him in his preparation for his own and defending against defendants' motion for summary judgment:

> "[S]everal affidavits given by several different eyewitnesses, givin [sic] there [sic] first hand account of seeing Officers...smoking cigarette and tobacco [sic] in the Inmates Housing Units, constantly. There were several inmate request to staff and their supervisors concerning the smoking of cigarette and tobacco in the inmates housing units, and the responses to these requests. There were inmate grievance and response from staff to show that the plaintiff did exhaust the administrative remedy process. There were reports from the center for disease and control prevention, discribing [sic] the various harm that exposure to second hand cigarette and tobacco smoke causes. There were Conn. Gen. Statutes, and Department of Correction Regulations that prohibits [sic] the smoking of cigarette and tobacco in the prison without the establishing of designated areas for such."

---

[1] Plaintiff brought this case against Warden Dzurenda, C.T.O. Wembley, C/O Anderson, C/O Pelkey, C/O Defrancesco and C/O Handley while he was confined at the Cheshire Correctional Institution in Cheshire Connecticut, claiming that he was exposed to environmental tobacco smoke ("ETS") in violation of his rights under the Eighth Amendment and state law.

[2] Plaintiff brought this case against Scott Mawhinney and "Mr. Breedlove" while he was confined at the MacDougall-Walker Correctional Institution in Suffield Connecticut, claiming that he was exposed to injurious second-hand smoke and that he was denied access to the courts because one of the defendants allegedly refused to notarize court documents and the other refused to respond to a grievance.

Exhibit G. Plaintiff further states that, "had defendants not destroyed" those documents, he would have "been in a much better position to argue" against defendants' motion for summary judgment and for his own cross-motion for summary judgment. Exhibit G Tellingly, Plaintiff does not describe how having those documents would have impacted the Judge's ruling, in which she denied his motion for summary judgment and granted, in part, defendants' motion. Indeed, as will be explained, it would have had no impact at all.

The Judge notes in the Dzurenda case that three issues were raised in the cross-motions for summary judgment: 1) whether plaintiff stated a viable constitutional claim; 2) whether plaintiff alleged a physical injury as required to bring a claim in federal court; and 3) whether plaintiff demonstrated the personal involvement of defendants Dzurenda, Pelkey, and Anderson. 2006 WL 691996, at *3 (D.Conn. 2006). The Judge dealt with grounds (1) and (2) in section (A). Id.

The Judge first stated that in order for an inmate to "prevail on an Eighth Amendment claim" he must show that "the prison officials' transgression was sufficiently serious" and that "the officials acted with a sufficiently culpable state of mind." Id. at p. 3. In ruling that Plaintiff failed to make a valid Eighth Amendment claim, the Judge stated that plaintiff was not assigned to a cell with a smoker and provided no evidence that he was subjected to ETS while in his cell, even if all the incidents plaintiff alleged were true, they'd still involve significantly less exposure to ETS than is necessary to overcome a summary judgment claim, and that plaintiff provided no specific evidence regarding the level of ETS exposure in his segregation cell. Id. at *4. None of the documents that Plaintiff alleges were destroyed would have addressed these concerns. This is particularly true because the Judge stated that even if she took as true all the incidents Plaintiff

described in his complaint and summary judgment motion, it would not reach the level necessary to make a constitutional claim.

> "Although the plaintiff has provided evidence of more incidents of smoking than are acknowledged by the defendants, he fails to meet the objective standard [of the deliberate indifference standard under the Eighth Amendment] for the period from September 2001 through June 2003. The Plaintiff was not assigned to a cell with a smoker and provides no evidence that he was subjected to ETS while in his cell." Id.

Further, the Judge's ruling contains several indications that Plaintiff submitted with his summary judgment motion the exact documents that he claims were destroyed by Defendants. For instance, as noted, Plaintiff claims that several affidavits with first hand accounts of officers smoking in the housing units were destroyed, but the Judge states that plaintiff "provided an affidavit from an inmate" which states that "he observed defendants smoking in the housing unit." Id. at *4. Plaintiff also states that documents showing his "inmate grievance" and the "response from staff" were destroyed, but the Judge notes that he provided "the responses to his inmate request and institutional grievance" with his motion. Id.

In short, Plaintiff has wholly failed to describe how any of the allegedly lost documents would have specifically helped him in his preparation for the summary judgment motion. Likewise, the Judge's opinion illustrates both that that Plaintiff could not have won the motion even if the allegedly destroyed and unsubmitted documents were submitted. Moreover, the text of the Judge's ruling demonstrates that Plaintiff actually did submit some affidavits and reports with his motion. Accordingly, he cannot make a showing of any injury and, as a matter of law, cannot be granted relief.

**2. There was also no injury in the *Mawhinney* case because the Judge's ruling would not have been impacted even if Plaintiff possessed the documents which were allegedly destroyed.**

In his case against Scott Mawhinney and Mr. Breedlove, Plaintiff states that Defendants destroyed the following documents, which prejudiced him in his preparation for defendants' motion to dismiss:

> "Affidavits and Inmates Requests, Inmates Grievance and responses from the Grievance coordinators, Conn. Gen. Statutes, and Conn. case law precedent, and Conn. cases that were argued on grounds favorable to the plaintiff…."

Exhibit G. Plaintiff further states that if the documents were not destroyed, they "could have been used by [him]" to argue against the motion to dismiss. Again, Plaintiff has wholly failed to detail how those documents would have altered the Judge's ruling that dismissed his case, instead simply stating that they "could have been used." He also fails to describe in any way the contents of the affidavits, inmate requests, grievances, etc. Further, he fails to describe by name or otherwise the "case law precedent" and "statutes" that would have been "favorable" to his argument. Lastly, as will be explained below, the Judge's ruling clearly illustrates that even if Plaintiff possessed the allegedly destroyed documents when he argued against the motion to dismiss, it would have made no impact.

As the Judge indicates, in the Mawhinney case the only issues raised by Mawhinney and Breedlove's Motion to Dismiss were whether Plaintiff's claims against them were barred by: (1) sovereign immunity; and (2) statutory immunity pursuant to Conn. General Statutes § 4-165. The Judge held that the both types of immunity barred Plaintiff's claims. Campbell v. Mawhinney, 2006 WL 1000055 at *2 (Conn.Super. 2006). First, the Judge stated that Plaintiff's claims for monetary damages were barred by sovereign immunity because monetary damages are only obtainable if permitted by statute and Plaintiff had not received such permission. Id. at *2. Second, the Judge stated that Plaintiff's claim for injunctive relief in that he was denied access to the courts, which is an exception to sovereign immunity, was barred because he had actually

filed a complaint and thus, wasn't denied access. Id. at *3. Third, the Judge held that even he were to take as true everything that Plaintiff said in his Complaint - that Mawhinney refused to notarize Plaintiff's documents and Breedlove lost and/or did not process the documents of Plaintiff's grievance in a timely manner - such acts would not rise to the level of malicious conduct under Conn. General Statutes § 4-165 that could support a claim for personal liability against the defendants. Id. at *4.

It goes without saying that the "Affidavits and Inmates Requests, Inmates Grievance and responses from the Grievance coordinators" alleged by Plaintiff to have been destroyed would not have impacted the Judge's ruling on sovereign immunity because that ruling was made as a matter of law. However, they also would not have impacted the Judge's ruling on whether Mawhinney's and Breedlove's conduct rose to level of malice because the Judge clearly stated that, in so ruling, he took as true Plaintiff's allegations. Similarly, the "Conn. Gen. Statutes, and Conn. case law precedent, and Conn. cases that were argued on grounds favorable to the plaintiff" would have had no impact on the Judge's ruling. Sovereign immunity is not a legal principle that is particularly complex or subject to frequent change. Even if Plaintiff had in his possession the statutes and cases mentioned above, none of them would have had any impact on a legal theory that is so black and white. Accordingly, because possession by Plaintiff of the allegedly destroyed documents would have had no impact on the Judge's ruling on the motion to dismiss, Plaintiff suffered no injury and, as a matter of law, cannot be granted relief.

**D. The Defendants Are Not Liable Under 42 U.S.C. § 1983 or Bivens v. Six Unknown Named Agents, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971)**

**1. Officers Perry, Weston and Paul Are Not Liable Because Plaintiff Fails to Show That Any of Them Were Personally Involved in Any Constitutional Violations Alleged by the Plaintiff**

Judgment should be entered as to the claims against Defendants Perry, Weston and Paul, because the Plaintiff fails to show that they personally violated any of the plaintiff's rights. The plaintiff is required to show that these Defendants were personally involved in the alleged deprivations of constitutional rights. Lopez Morales v. Otero De Ramos, 725 F. Supp. 106, 108 (D.P.R. 1989) (citing Fernandez v. Chardon, 681 F.2d 42, 56-58 (1st Cir. 1982)), aff'd, 915 F.2d 1557 (1st Cir. 1990).

The only allegations plaintiff makes describing who in fact purportedly denied him the special diet he requested are his allegations that Nurse Rocha told him that she was not in charge of his diet. Amended Complaint, ¶ 15. Plaintiff only asserts that "Two John Doe Officers came to the Medical Housing Unit....with a breakfast tray consisting of meat products....." and that upon informing the Officers that he was a Rastafarian, he was told, "this is not Club Med, eat what you get or do without." Amended Complaint, ¶ 16. He nowhere claims that any of the Defendants were responsible for the refusal to provide the special diet the plaintiff sought or that they in any way personally violated his rights or committed any action or inaction that violated his rights.

Furthermore, the only claims that the Plaintiff asserts against Officers Perry, Weston and Paul are related to the destruction of his legal materials. Amended Complaint, ¶¶ 10, 11, 13. The only specific claim the Plaintiff makes against any of these Defendants is that on, "July 7th, 2005, the plaintiff get [sic] the first contact from the Wyatt Detention Facility, via his Unit Team stating 'Contacted Officer Perry @ Wyatt 7/5/05, 8:30 am, will send Legal Mail." Amended Complaint, ¶ 21. Plaintiff has not produced, and cannot point to any other evidence to support his claim that Officer Perry was in fact directly involved in the destruction of his legal materials.

Accordingly, because plaintiff cannot support his constitutional claims against the present defendants solely on the basis of supervisory responsibility, Plaintiff fails to create a genuine issue of material fact, and Defendants are entitled to judgment as a matter of law.

**2. Cornell Corrections of Rhode Island, Inc. Is Not Liable For Any Constitutional Violation Alleged by the Plaintiff Because There Is No Supervisory Liability Under § 1983**

Since Plaintiff cannot show any personal involvement on the part of Officers Perry, Weston and Paul, it appears that the Plaintiff is basing his theory of liability on the doctrine of respondeat superior. Thus, his claims must fail, as neither Bivens nor Section 1983 liability can be predicated upon a theory of *respondeat superior*. Monell v. Dept. of Social Services, 436 U.S. 658, 690-92 (1978) (no *respondeat superior* liability under § 1983); Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989) (same); Pandy v. Freedman, 1995 U.S. App. Lexis 27529 * 7 (1st Cir. 1995) (no supervisory liability on Bivens claim).

The United States Supreme Court and this Court have consistently held that claims brought pursuant to 42 U.S.C. § 1983 cannot be predicated upon the doctrine of *respondeat superior*. Board of County Commissioners of Bryan County, Okla. v. Brown, 520 U.S. 397, 403-404 (1997) (rehearing denied, 520 U.S. 1283 (1997)); Monell v. Department of Social Services, 436 U.S. 658, 690-692 (1978); Sarro v. Cornell Corrections, Inc., 248 F. Supp. 2d 52, 63 (D.R.I. 2003). A governing body may not be held liable under § 1983 solely because it employs a tortfeasor. Brown, 520 U.S. at 403 (citing Monell, 436 U.S. at 692). This is because "[s]ection 1983 permits an individual whose constitutional rights are violated to recover damages from the 'person' responsible for the violation." Sarro, 248 F. Supp. 2d at 63 (quoting 42 U.S.C. § 1983). Accordingly,

> "in Monell and subsequent cases, [the United States Supreme Court] ha[s] required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury. Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."

Brown, 520 U.S. at 403-404 (internal citations omitted); see also Gabriel v. Corrections Corporation of America, 211 F. Supp. 2d 132, 138 (D.D.C. 2002) (stating that the plaintiff, to state a claim under § 1983 against the corporate defendant, must allege that his injuries occurred as a result of a specific corporate policy or custom). "Where a plaintiff fails to allege the existence of any policy or custom that could have arguably violated his rights, dismissal is proper." Gabriel, 211 F. Supp. 2d at 139 (citing Polk County v. Dodson, 454 U.S. 312, 326-327 (1981)).

In the present case, the Plaintiff has failed to plead sufficient facts giving rise to a vicarious liability claim against the Cornell corporations under 42 U.S.C. § 1983. The Plaintiff has failed to allege that his constitutional rights were violated as a result of any policy or custom of Cornell Corrections of Rhode Island, Inc. See, Amended Complaint, ¶ 2. Here, the Plaintiff alleges that the corporate defendant "refuse [sic] to set in place a policy to make sure that the plaintiff was fed upon arrival at the said facility and to ensure that during the plaintiff [sic] stay at said facility, plaintiff would be fed on a daily basis." Id. The Plaintiff's allegations, unsupported by the record in this matter, preclude even an inference that the alleged wrongful conduct of which he complains was the result of any corporate policy. By Plaintiff's own pleading, (See, Amended Complaint, ¶¶ 16, 17), the Plaintiff was provided food, which he allegedly refused to eat. For the reasons set forth above, there was no constitutional violation in the denial of a Rastafarian diet to the Plaintiff, and Plaintiff can point to no policy put in place by Cornell Corrections of Rhode Island, Inc. which unreasonably interfered with his First and

Eighth Amendment rights. The allegations in the Complaint detail alleged wrongful conduct that can only be that of individuals.

### E. Plaintiff's Motion for Summary Judgment Is Not Timely Filed

On March 7, 2007, this Court entered a Scheduling Order which set a discovery Closure Date of May 7, 2007. Scheduling Order, ¶ 1. The Order further states that, "A motion for summary judgment may not be made more than 20 days after the Closure Date." Scheduling Order, ¶ 4. By this Order then, and pursuant to Fed.R.Civ. P. 6, any motion for summary judgment would have been required to be filed on or before May 29, 2007.[3] Since Plaintiff's Motion was only received by these Defendants on August 23, 2007, purportedly after being sent on August 20, 2007, Plaintiff's Motion is not timely and should be denied.

### F. Plaintiff's Factual Foundations Are Without Support in the Record

Even if this Court should see fit to entertain Plaintiff's Motion for Summary Judgment, Plaintiff's Motion should be denied for the reason that numerous statements contained in his "Statement of Material Undisputed Facts" are in fact disputed and further enjoy no support whatsoever in the record.

In his "Statement of Material Facts Not in Dispute", Plaintiff makes a series of conclusory statements, none of which enjoy any support in the record, and which the Defendants dispute. (See, Defendants' Statement of Disputed Facts). Most of these contentions by the Plaintiff revolve around communications with staff members and assertions relative to his alleged time spent in the Health Services Unit at the Wyatt facility.

Plaintiff alleges that the first nine days of his confinement at Wyatt were spent in the Health Services Unit ("HSU") at the Wyatt facility. Plaintiff points out, correctly, that there are no entries made in the HSU logbook during the period of time in which he alleges he was therein

[3] Monday, May 28, 2007 was a National Holiday, Memorial Day.

confined. (See, Plaintiff's Statement of Material Facts Not in Dispute, Nos. 8, 11, 12, 21, 23). Plaintiff has not produced any evidence whatsoever to support even his claim that he was in the HSU to begin with, a claim which Defendants refute.

Plaintiff further references a series of communications, made either personally or on his behalf, with staff at the Wyatt facility regarding his religion and requests for dietary accommodation to comport with his religious beliefs as well as in connection with the storage and subsequent destruction of his legal materials. There is no evidence in the record to which Plaintiff can point to support these "factual" assertions of the Plaintiff, and Defendants dispute that any such communications, even if made, were ever received by staff at the Wyatt facility.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact." Celotex v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

As applied here, the Plaintiff has not identified, and cannot identify those portions of the record to this point to demonstrate the absence of any material fact. As Plaintiff relies heavily upon the above-referenced "undisputed facts" in support of his entitlement to summary judgment, facts which have no support in the record, Plaintiff's Motion should be denied.

## G. Plaintiff's Statements in His Statement of Facts, Whether Taken as True or Disputed Are Not Material

Plaintiff sets forth a series of statements in his "Statement of Material Facts Not In Dispute", many of which, as set forth above, are not supported by the record in this case, and

accuracy of which are disputed by the Defendants. Notwithstanding any dispute as to the truth of the statements, these "facts" are not material to the instant matter.

"A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, 328 F.3d 1, 6 (1st Cir. 2003). Even if each of the facts the Plaintiff cites to support his claims is true, these facts would not affect the outcome of the case under the controlling law.

As set forth in argument above, notwithstanding the fact that Plaintiff's legal materials were destroyed per policy at the Wyatt facility, Plaintiff did not suffer any injury sufficient to constitute a cognizable claim for a violation of his First Amendment rights. In the Mawhinney case, Plaintiff's own memorandum opposing the Defendants' motion to dismiss makes absolutely no mention whatsoever regarding any inability to counter the grounds set forth in the Defendants' motion. Exhibit H. Furthermore, the Judge's ruling in the Mawhinney case is not based on an absence of fact put forth by the Plaintiff, but rather as a matter of law, based upon sovereign and statutory immunity. Thus, even if all of the facts alleged by the Plaintiff surrounding the destruction of his legal materials were true, such facts are not material because Plaintiff suffered no tangible injury as a result. See, Lewis v. Casey, 518 U.S. 343 (1996).

Furthermore, in the Dzurenda case, notwithstanding the denial of his motion for summary judgment, and the partial grant of the Defendants' motion for summary judgment, the Plaintiff was not prejudiced in this case by the destruction of his legal materials at Wyatt. The very documents which Plaintiff contends were destroyed to his detriment are in fact referenced in the Judge's decision. Dzurenda, at *4. Also, the Court noted that, "[A] careful reading of the verified complaint and attached exhibits reveals more incidents of exposure to ETS that [sic] those acknowledged by defendants." Id.

In the instant matter, Plaintiff did not allege that any materials destroyed included evidence of the level of ETS to which he was exposed during the period of time at Cheshire. Exhibit B. "Unless the plaintiff can establish that the levels of ETS violated contemporary standards of decency, he cannot prevail on his claim." Dzurenda, at *5. Thus, even if all of the facts alleged by the Plaintiff surrounding the destruction of his legal materials were true, such facts are not material because Plaintiff suffered no tangible injury as a result.

Finally, notwithstanding Plaintiff's assertions that he was not fed for his first nine days at Wyatt, and assuming, *arguendo*, that all of the statements attributed to staff at Wyatt are true, such facts are not material. As noted above, a fact is material if its resolution might affect the outcome of the case under the controlling law. Cochran, *supra*. As applied here, the facts alleged by Plaintiff, even if true, would not affect the outcome of the case under the controlling law. As set forth above, the controlling law is that where the provision of a religious diet is an excessive administrative burden, the denial of such a diet does not rise to the level of a constitutional violation. See, Kahey v. Jones, 836 F.2d 948; Ashelman v. Wawrzaszek, 111 F.3d 674; and Benjamin v. Coughlin, 708 F.Supp. 570. Furthermore, even if the factual allegations of the Plaintiff may be true, these facts are similarly not material because Plaintiff does not allege the involvement of Officers Perry, Weston or Paul in failing to provide a religious diet.

Accordingly, Plaintiff fails to establish the existence of any issue of material fact, and the Defendants are entitled to judgment as a matter of law.

## V. CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment should be granted and all of Plaintiff's claims against Defendants should be dismissed.[4]

[4] Furthermore, all claims against the unserved Defendants should similarly be subject to summary judgment for the reasons set forth herein.

Defendants, Cornell Corrections of Rhode Island, Inc. (incorrectly identified as Cornell Corrections, Inc.) Officer April Perry, Officer Geoff Weston and Officer Henry Paul,
By their attorneys,

*/s/ Dennis T. Grieco II*

Dennis T. Grieco II #5057
**GIDLEY, SARLI & MARUSAK, LLP**
One Turks Head Place, Suite 900
Providence, RI 02903
Tel: (401) 274-6644 / Fax: 331-9304
DTG@GSM-law.com

## CERTIFICATE OF SERVICE

David Campbell, Pro Se
U.S.P. P.O. Box 300
Waymart, PA 18472

I hereby certify that on the 10th day of September, 2007, I mailed and/or had hand-delivered a true copy of the within to counsel of record, as above.

*/s/ Dennis T. Grieco II*