UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DAVID CAMPBELL,
Plaintiff,

v. : Case No. 05-428T

CORNELL CORRECTIONS OF RHODE ISLAND, INC.; OFFICER APRIL PERRY; OFFICER GEOFF WESTON; OFFICER HENRY PAUL; CAPTAIN ROBERT REIS; OFFICER DAVE DUMAS; LPN MAUREEN ROCHA; and FIVE UNKNOWN OFFICERS

Defendants.

**MEMORANDUM AND ORDER**

David Campbell, a former inmate at the Wyatt Detention Facility ("Wyatt") brought this action pursuant to 18 U.S.C. § 1983 alleging that Wyatt's refusal to serve him a "vegetarian" diet required by his Rastafarian beliefs and its destruction of "legal papers" relating to pending lawsuits that he had filed violated his rights under the First and Eighth Amendments to the United States Constitution.[1]

[1] Because Wyatt is a privately-owned facility that operates pursuant to a contract with the United States, the defendants may be viewed as having acted under color of federal law rather than state law; and, therefore, Campbell's claims should be viewed as made pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed 619 (1971), instead of § 1983 claims. Sarro v. Cornell Corrections, Inc., 248 F.Supp.2d 52, 58 (D.R.I. 2003). However, this does not change the analysis.

The parties have filed cross-motions for summary judgment; and, for the reasons hereinafter stated, Campbell's motion is denied and the defendants' motion is granted, in part, and denied, in part.

## Background

Campbell has been incarcerated for approximately eighteen years and, before being transferred to Wyatt in May 2005, he had filed several lawsuits against officials at other prisons alleging constitutional violations ranging from Eighth Amendment violations based on his exposure to second-hand smoke to First Amendment violations based on a counselor's failure to notarize Campbell's signature on a court form.

Campbell alleges that, upon his transfer to Wyatt, he made it known to prison officials that he was a Rastafarian and that, because of his religious beliefs, he did not eat meat. Accordingly, he requested that he be placed on a "vegetarian" diet. Wyatt's computer records note that Campbell is a vegetarian, but there appears to be some dispute as to when that information was received or entered into Campbell's file.

During Campbell's incarceration at Wyatt, the institution's rules and regulations stated that "Vegetarian and no red meat diets are not offered." Pl.'s Ex. E. However, Wyatt did provide kosher meals to prisoners who requested them for

religious reasons.[2] In addition, "[m]edically necessary diets [were] prescribed by the facility physician." Id.

Campbell alleges that, despite his complaints to guards and the staff nurse, Wyatt did not serve him vegetarian meals and, therefore, he did not eat anything for a nine day period after he arrived. According to Campbell, on one occasion, a guard responded to his complaints by telling him to simply leave the meat and eat the rest of the food and, on another occasion, a staff nurse told him: "This is a private facility. We can do whatever we want to." Am. Compl. 5. Campbell further alleges that, as a result of not eating, he experienced a sore throat, dizziness, fatigue, and weight loss.

On May 15, 2005, Wyatt began serving vegetarian meals to Campbell and it continued to do so until May 25, 2005, when Campbell was transferred to another prison.

At the time he was transferred, Campbell attempted to take with him documents relating to pending lawsuits he had filed against officials of a federal prison who allegedly exposed him to second hand smoke and against officials at a state prison who allegedly refused to notarize his signature on court documents. Campbell states that he was told that the documents would have to be forwarded to him by Wyatt, but because he did not know

[2] Such requests had to be confirmed by a chaplain of the prisoner's faith. Pl.'s Ex. E.

where he was being sent, he was unable to complete the form required to forward the documents. Instead, Campbell completed a form requesting that Wyatt hold the documents for thirty days in order to give him time to provide a forwarding address. Campbell asserts that he did provide a forwarding address within the thirty day period but the defendants dispute that assertion.[3] In any event, Wyatt destroyed the documents in July 2005.

Campbell's claims against most of the defendants in the federal prison case were dismissed on the ground that the alleged smoking occurred in areas that Campbell was free to leave. Campbell v. Dzurenda, 2006 WL 691996, at *12 (D.Conn. March 17, 2006). Campbell's claims against the remaining defendants in that case were settled.

Campbell's claims in the state prison case were dismissed at the pleadings stage on the ground that the defendant prison officials were entitled to immunity under Connecticut law. See Campbell v. Mawhinney, 2006 WL 1000055 (Conn. Super. March 27, 2006).

The defendants, in this case, are Wyatt, five correctional officers, and a nurse, but only three of the individual defendants have been served.[4] The defendants have not challenged

---

[3] Campbell has submitted copies of correspondence in support of his contention.

[4] The defendants who have been served are Officer April Perry, Officer Henry Paul, Officer Geoff Weston, and Cornell

Campbell's assertion that he is a Rastafarian and that, because of that, he does not eat meat. Nor have the defendants challenged Campbell's assertion that, while incarcerated at other prisons, he was served vegetarian diets.

**Standard of Review**

Rule 56(c) provides for the entry of summary judgment when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those "'that might affect the outcome of the suit under the governing law.'" Morrissey v. Boston Five Cents Savings Bank, 54 F.3d 27, 31 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Morrissey, 54 F.3d at 31 (internal quotes omitted).

In determining whether summary judgment is appropriate, a court views the evidence and "all inferences that may fairly be drawn from [it] in the light most favorable to the nonmoving party." Id. at 29. In this case, because Campbell is

---

Corrections, Inc. The defendants who have not been served are Captain Robert Reis, Officer David Dumas, and LPN Maureen Rocha. Campbell has not explained why he has been unable to identify the John Does during the course of discovery.

proceeding pro se, his pleadings must be construed liberally. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

## Analysis

I. The "Vegetarian" Diet Claims

Campbell argues that Wyatt's failure to provide him with a diet consistent with his religious beliefs violated his rights under the First Amendment's Free Exercise Clause and the Eighth Amendment's prohibition against cruel and unusual punishment.

A. The Eighth Amendment Claim

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to "ensure that inmates receive adequate food . . . ." Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). Here, Campbell does not allege that Wyatt failed to provide him with food that was adequate in quantity, nutritional value or in any other respect. Rather, he alleges that Wyatt failed to provide him with food that was consistent with his religious beliefs. Consequently, he has failed to state a claim under the Eighth Amendment.

B. The First Amendment Claim

Like other constitutional rights, a prisoner's First Amendment right to freely exercise his religion "is necessarily limited by the fact of incarceration, and may be curtailed in

order to achieve legitimate correctional goals . . . ." Ward v. Walsh, 1 F.3d 873, 876 (9th Cir. 1993) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987)). Accordingly, the Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64 (1987). Four inquiries must be made in making that assessment:

> (1) Whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> (2) Whether there are alternative means for exercising the right that remain open to prison inmates;
>
> (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates, and on the allocation of prison resources generally;
>
> (4) Whether there exist ready alternatives to the regulation that would accommodate the prisoner's rights at de minimus cost to valid penological interests.

See id. at 90-91.

Since Turner, several courts have recognized that, generally, a prisoner is entitled to a diet that is consistent with his religious beliefs. See McEachin v. McGuinnis, 357 F.3d 197, 203 n.7 (2d Cir. 2004) (listing cases in the 2nd, 8th, 9th, and 10th Circuits holding that prisons must provide inmates with diets that take into account their religious beliefs). Courts,

also, have recognized that this right may be limited by the burden imposed on a prison in providing special diets to individual prisoners. See, e.g., Bass v. Coughlin, 976 F.2d 98 (2d Cir. 1992); Kahane v. Carlson, 527 F.2d 492 (2d Cir. 1975). In attempting to strike an appropriate balance between these competing interests, a court must examine the facts of each case. The absence of any bright line rule is illustrated by the contrasting results reached in Benjamin v. Coughlin, 708 F.Supp. 570 (S.D.N.Y. 1989), and Gordon v. Pepe, 2004 WL 1895134 (D.Mass. Aug. 24, 2004).

In Benjamin, the court rejected a demand by Rastafarian inmates that they be provided a type of vegetarian diet known as an Ital diet. After hearing testimony from several Rastafarian inmates who expressed different opinions as to what constituted a proper Ital diet, the court found that "[t]he complex of dietary restrictions that plaintiffs described would impose undue financial and administrative burdens on defendants to provide an Ital diet that met with the religious views of every Rastafarian inmate." Benjamin, 708 F.Supp. at 575-76. The Benjamin court also noted that some versions of the Ital diet would have required that food be cooked in clay or calabash pots, which the court found to be "impracticable because clay is breakable, and it violates New York food preparation regulations which forbid the use of wooden working surfaces other than hard

maple. Porous materials can retain and breed harmful bacteria." Id. at 575.

By contrast, in Gordon, the court denied a motion for summary judgment by the Massachusetts Department of Correction ("DOC") with respect to a Rastafarian prisoner's demand that he be provided an Ital diet instead of the uniform vegetarian diet available to all other prisoners requesting a vegetarian diet because the prisoner believed that, unless he adhered to an Ital diet, he could not enter heaven. Gordon, 2004 WL 1895134 at *1. The DOC argued that its decision to offer only one form of vegetarian diet was "reasonably related to legitimate penological interests" of efficiency, morale, and security, and that the plaintiff could simply decline to eat things that were not part of the Ital diet. However, the court rejected that argument, noting that it was undercut by the fact that the DOC previously had served an Ital diet to the plaintiff for nearly three years without incident. Id. at *3.

In this case, the dearth of facts presented thus far makes it difficult to assess the burden that preparing the "vegetarian" diet requested by Campbell would have imposed on Wyatt; the effect that doing so might have had on operation of the prison; or the extent to which the failure to provide such a diet may have impermissibly infringed on Campbell's First Amendment rights.

There is little or no evidence regarding the type of "vegetarian" diet that Campbell requested, the degree of difficulty involved in providing it, or the extent of any additional burden that may have been imposed on Wyatt if it were required to make accommodations for other prisoners requesting special diets.[5]

There is a similar dearth of evidence regarding the extent to which Wyatt's failure to provide a "vegetarian" diet may have infringed on Campbell's exercise of his religion. The record is silent as to whether Campbell could have received adequate nutrition, without violating his beliefs, by eating only the meatless portions of the meals served to him.

In short, at this stage of the litigation, there is such a lack of evidence bearing on the relevant issues that neither party can be said to be entitled to judgment as a matter of law with respect to Campbell's free exercise claim.

II. The First Amendment Right of Access Claim

An incarcerated prisoner, like any other citizen, has a constitutionally protected right of access to the courts. Lewis

[5] The parties have not addressed whether providing special diets only to prisoners requesting them for religious reasons would run afoul of the First Amendment's Establishment Clause. Nor have they addressed the administrative burden that might be involved in determining whether a prisoner requesting a special diet for what are claimed to be religious reasons has a sincerely held belief in a bona fide religion that requires such a diet.

v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Under some circumstances, prison officials' destruction of a prisoner's legal papers may violate that right. Simmons v. Dickhaut, 804 F.2d 182 (1st Cir. 1986). However, in order to make out such a claim under § 1983 or Bivens, a plaintiff must show some form of tangible injury resulting from the alleged constitutional violation. Lewis, 518 U.S. at 351.

Here, it is clear that destruction of the "legal papers" relating to Campbell's then-pending lawsuits did not cause any tangible injury to Campbell. Campbell's state court case was dismissed, as a matter of law, on the pleadings. Campbell's federal court claims were either settled or dismissed on the ground that he was free to move away from the alleged exposure to smoke. Campbell has presented no evidence that his inability to access his "legal papers" affected the disposition of either case. On the contrary, it is clear that the outcome was not affected in either case.

## Conclusion

For all of the foregoing reasons, (1) Campbell's motion for summary judgment is denied; (2) the defendants' motion for summary judgment is granted with respect to Campbell's First Amendment claim for destruction of his "legal papers" and Campbell's Eighth Amendment claim alleging failure to provide

him with a "vegetarian" diet; and (3) the defendants' motion for summary judgment is denied with respect to Campbell's First Amendment claim alleging failure to provide him with a "vegetarian" diet.

IT IS SO ORDERED:

Ernest C Torres

Ernest C. Torres
Senior District Judge
Date: 6/26/08